IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : Chapter 11 |
| | : |
| AMERICAN CLASSIC VOYAGES, | : Bankruptcy Case No. 01-1954-KJC |
| CO., et al., | : (Jointly Administered) |
| | : |
| Debtors. | : Adv. Proc. No. 03-56998-KJC |
| | : |
| AMERICAN CLASSIC VOYAGES CO., | : |
| et al., DEBTORS, by and | : |
| through PAUL GUNTHER, | : |
| PLAN ADMINISTRATOR, | : |
| | : |
| Appellants, | : |
| | : |
| v. | : Civil Action No. 07-352-JJF |
| | : |
| JP MORGAN CHASE BANK, | : |
| NATIONAL CITY BANK OF | : |
| MICHIGAN/ILLINOIS, and | : |
| HIBERNIA NATIONAL BANK, | : |
| | : |
| Appellees. | : |

Mark D. Silverschotz, Esquire; Jeffrey E. Glen, Esquire and Luma S. Al-Shibib, Esquire of ANDERSON KILL & OLICK, P.C., New York, New York.
Norman M. Monhait, Esquire of ROSENTHAL MONHAIT & GODDESS, P.A., Wilmington, Delaware.
Counsel for Appellants.

Anthony G. Stamato, Esquire and Robert M. Spalding, Esquire of KAYE SCHOLER LLC, Chicago, Illinois.
Laurie Selber Silverstein, Esquire and Gabriel R. MacConaill, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.
Counsel for J.P. Morgan Chase Bank.

Robert J. Sidman, Esquire and Tiffany Strelow Cobb, Esquire of VORYS, SATER, SEYMOUR and PEASE LLP, Columbus, Ohio.
Michael D. DeBaecke, Esquire of BLANK ROME LLP, Wilmington, Delaware.
Counsel for National City Bank (f/k/a National City Bank of the Midwest, f/k/a National City Bank of Michigan/Illinois) and Capital One, NA (f/k/a Hibernia National Bank).

**MEMORANDUM OPINION**

March 25, 2008
Wilmington, Delaware.

**Farnan, District Judge.**

Pending before the Court is an appeal by the Debtors, American Classic Voyages Co. and their affiliates, from the Order of the United States Bankruptcy Court for the District of Delaware entered on April 27, 2007 (the "Order"), dismissing the Debtors' complaint in an adversary proceeding against Appellees, JP Morgan Chase Bank, Capital One NA (f/k/a Hibernia National Bank) and National City Bank (f/k/a National City Bank of the Midwest f/k/a National City Bank of Michigan/Illinois). For the reasons set forth below, the Court will affirm the decision of the Bankruptcy Court.

## I.  THE PARTIES' CONTENTIONS

On October 16, 2003, the Debtors commenced an adversary proceeding against Appellees seeking to avoid as a preferential transfer and recover the payment of $29.5 million plus interest (the "Transfer") made to Appellees as a repayment of funds loaned under a revolving line of credit (the "Chase Loan"). The Bankruptcy Court held a four day trial on the issue of the insolvency of parent company, American Classic Voyages Co. ("AMCV"), and its subsidiary, the Delta Queen Steamboat Co. ("DQSC"), the named borrower under the Chase Loan. The Bankruptcy Court concluded that Appellees had successfully rebutted the statutory presumption of insolvency under Section 547(f) of the Bankruptcy Code, and therefore, the Debtors had not proven insolvency on August 14, 2001, the date of the transfer.

By their Motion, the Debtors contend that this matter should be remanded for a new trial in light of the Third Circuit's decision in VFB LLC v. Campbell Soup Co., 482 F.3d 624 (3d Cir. 2007), issued a month prior to the Bankruptcy Court's decision but after the submission of post-trial briefs to the Bankruptcy Court. Specifically, the Debtors contend that under VFB, it was error for the Bankruptcy Court to rely upon expert testimony regarding solvency that was premised on discounted cash flow methods, where as here, a public market existed for the Debtors' stock. The Debtors point out that in the eighteen month period prior to the disputed transfer, AMCV's publicly-traded common shares lost 94% of their value, dropping from $35.25 per share to $1.93 per share. The Debtors also contend that the expert testimony at issue was improperly based upon speculative and unreliable projections of management regarding solvency.

In response, Appellees contend that VFB does not stand for the proposition that market capitalization is the only accepted methodology for considering valuation in solvency disputes. Rather, Appellees contend that VFB recognizes that discounted cash flow is an accepted methodology. Appellees further contend that the Debtors waived any argument based on the methodology used at trial for determining solvency, because it was not preserved for appeal. In addition, Appellees contend that the Bankruptcy Court correctly found that sufficient evidence was presented to rebut the presumption of insolvency of AMCV and

2

DQSC, and that the Debtors could not ultimately prove insolvency by a preponderance of the evidence. Specifically, Appellees direct the Court to evidence aside from their expert's testimony regarding solvency, including statements from management, the Debtors' sworn SEC filings and financial schedules and evidence concerning the business dealings of AMCV and DQSC[1], which Appellees contend demonstrate that but for the events of September 11, 2001, which resulted in a virtual cessation of the tourism industry, the Debtors would not have gone into bankruptcy.

**II.   STANDARD OF REVIEW**

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative

---

[1]   This evidence includes evidence that: (1) prior to September 11, 2001, DQSC had an untapped $10 million revolving credit facility; (2) AMCV successfully refinanced $50 million of one-year MARAD guaranteed notes; (3) AMCV had resolved disputes with its shipbuilders and planned to bring additional ships on to its four operating cruise lines in the coming months, and (4) the Debtors' business records from June and July 2001 revealed that bookings in the relevant travel market were exceeding their forecasts for the third and fourth quarters of 2001.

3

facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

### III. DISCUSSION

Reviewing the decision of the Bankruptcy Court in light of the applicable standard of review and governing legal principles, the Court concludes that the Bankruptcy Court's decision that the Debtors were not insolvent on the date of the challenged transfer is not erroneous. Section 547(f) of the Bankruptcy Code provides for an initial presumption that the Debtors were insolvent 90 days immediately preceding the date of the filing of their bankruptcy petition; however, this presumption is rebuttable and does not shift the burden of proof away from the Debtors, who must ultimately prove their insolvency by a preponderance of the evidence. See 5 Lawrence P. King, et al., Collier on Bankruptcy § 547.03[5], at 547-539 (15th ed. 2005); H.R. Rep. No. 95-595, at 375 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6331; Official

4

Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 385 F.3d 313, 318 (3d Cir. 2004).

In reaching its conclusion that the Debtors were not insolvent, the Bankruptcy Court credited the testimony and analysis of Appellees' expert witness over the testimony and analysis of the Debtors' expert. The Court finds no error in the Bankruptcy Court's determination. The Debtors contend that the Third Circuit's decision in VFB requires the solvency of a public company to be evaluated using a market capitalization methodology rather than a discounted cash flow analysis; however, the Court does not read VFB to compel that analysis in the circumstances of this case. In VFB, the plaintiffs made no attempt to reconcile the disparity between the testimony of their expert witnesses and the objective value of the company at issue in the marketplace. 482 F.3d at 629. In contrast, the data and analysis accepted by the Bankruptcy Court in this case was consistent with the available marketplace data. In addition to the testimony and analysis offered by Appellees' expert, Appellees presented additional evidence concerning the state of AMCV and DQSC's business, which in the Court's view, was sufficient to rebut the presumption of insolvency. The Debtors ultimately bore the burden of proof with regard to insolvency, and the Bankruptcy Court found the analysis of the Debtors' expert witness to be flawed in several respects. In addition, the Bankruptcy Court addressed and rejected the arguments made by the Debtors here,

5

that the projections relied upon by Appellees' expert witness were not reasonable or reliable when they were prepared. In the Court's view, the Bankruptcy Court's findings and analysis with respect to each of these issues was not erroneous.

In sum, the Court can discern no legal error in the Bankruptcy Court's use of the discounted cash flow analysis for evaluating insolvency in the circumstances of this case, and applying that standard to the facts adduced during trial, the Court can discern no clear error that would justify setting aside the Bankruptcy Court's findings. Accordingly, the Court will affirm the decision of the Bankruptcy Court dismissing the Debtors' adversary complaint against Appellees.

**IV. CONCLUSION**

For the reasons discussed, the Court will affirm the April 27, 2007 Order of the Bankruptcy Court.

An appropriate Order will be entered.